# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

In the Matter of the Search of:

**1560 Grand Avenue, Hartford, Wisconsin, 53027, see Attachment A.**

Case No. 19-892 M (NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**1560 Grand Avenue, Hartford, Wisconsin, 53027, see Attachment A.**

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18, United States Code, Section 922(g)(1) (possession of firearms and/or ammunition by a felon)

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Richard Connors, SA ATF
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: August 12, 2019

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin

Nancy Joseph , U.S. Magistrate Judge
*Printed Name and Title*

Case 2:19-mj-00892-NJ   Filed 08/30/19   Page 1 of 23   Document 1

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, **Richard Connors**, being first duly sworn, hereby depose and state as follows:

## I. AGENT BACKGROUND AND EXPERIENCE

1.     I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assigned to the Milwaukee Field Office since October of 2015. I have been employed as a full time law enforcement officer for over three and a half years. I have received training at the Federal Law Enforcement Training Center in Glynco, GA. I attended the Criminal Investigator Training Program, as well as ATF's Special Agent Training Program. I have received training in the investigation of unlawful possession of firearms, the unlawful transfer of firearms, and the unlawful dealing in firearms without a dealer's license. I also work alongside several senior ATF agents who have worked extensive firearms trafficking investigations in the past. Prior to becoming a Special Agent with the ATF, I received two bachelor's degrees from Northern Illinois University in the fields of Sociology and International Relations. I have received a Master's degree from Northern Illinois University in the field of American Government.

2.     Based on my training and participation in investigations related to the criminal possession and trafficking of firearms, I know and/or have experience with the following:

   a. I have utilized informants to investigate firearms trafficking. Through informant interviews and debriefings of individuals involved in firearms trafficking, I have learned about the manner in which individuals and organizations distribute firearms in Wisconsin.

   b. I have also relied on informants to obtain firearms from individuals on the streets (as opposed to licensed gun dealers), known as a controlled purchase.

1

c. I have experience conducting street surveillance of individuals engaged in firearms trafficking. I have participated in the execution of numerous search warrants where firearms, ammunition, magazines, and firearms cases have been seized.

d. I know that individuals who are criminally possessing firearms such as previous convicted felons are apt to retain those firearms. A person previously convicted of a felony cannot purchase a firearms from a federal firearm licensee (FFL) and often will keep the firearms them come to possess due to the difficulty of obtaining them.

e. I know that individuals in illegal possession of firearms often post, keep, and display photographs of themselves with the firearms using their electronic devices. I have participated in several firearms trafficking investigations that involved the seizure of computers, cellular phones, cameras, and other digital storage devices. The subsequent analysis of electronic data stored within these devices has often yielded evidence of the crimes being investigated in the form of photographs, videos, social media posts, and various forms of electronic messaging about illegal firearms.

3. The facts described in this affidavit come from my personal observations, my training and experience, information obtained from witnesses, and information obtained from other agents during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II.    PURPOSE OF AFFIDAVIT

4. I make this affidavit in support of applications under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as **1560 Grand Avenue, Hartford, Wisconsin, 53027** (hereinafter "the **Target Residence**"), more particularly described in Attachment A to that application and to seize evidence described in Attachment B to that application.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that, on or within the premises described in Paragraph 4, there exists evidence of violations of Title 18,

2

United States Code, Section 922(g)(1) (possession of firearms and/or ammunition by a felon). The evidence to be seized is described in Attachment B.

## III.    PROBABLE CAUSE

6.      In early July of 2019, Your Affiant received three separate phone calls from concerned citizens regarding Justin BEHN (W/M, DOB: 10/31/1987). Additionally, Officer Ryan Bloch of the Germantown Police Department contacted Your Affiant and reported that SOI-2 had provided Officer Bloch with firearms that SOI-2 had purchased from BEHN. BEHN has been accused of committing several property thefts from multiple individuals in and around Washington County, Wisconsin. Additionally, the callers indicated that BEHN was a convicted felon who was in possession of multiple firearms and several thousand rounds of unfired ammunition.

7.      Your Affiant has dealt with several sources of information (SOI) regarding BEHN. It should be noted that BEHN allegedly owes money or the return of property to all of these sources. Prior to interviewing each SOI, Your Affiant made it explicitly clear that lying to a federal agent was a federal offense that is punishable up to five years in prison. Each SOI stated he/she understood the penalties.

### A.    BEHN's Prior Felony Convictions

8.      According to BEHN's NCIC criminal history, he is a convicted felon with a "DISQUALIFIED" firearm status. On August 2, 2019, Your Affiant received certified documentation of judgements of conviction against BEHN for three felony cases in the state of Wisconsin.

9.      First, BEHN was convicted of Second Degree Sexual Assault of a Child in Waukesha County case 2005CF000665 on May 3, 2006.

3

10.     Second, BEHN was convicted of Operating a Vehicle to Flee or Elude an Officer in Ozaukee County court case 2005CF000208 on June 21, 2006.

11.     Third, BEHN was convicted of Failure to Report to Jail in Ozaukee County case 2007CF000065 on June 5, 2007.

**B.     SOI-1**

12.     On July 26, 2019, Your Affiant interviewed SOI-1 regarding BEHN. SOI-1 advised that he/she has worked with BEHN since approximately early 2017. SOI-1 was not aware BEHN was a convicted felon, or that could not possess firearms, until June of 2019, when SOI-2 informed SOI-1 of this fact.

13.     SOI-1 stated BEHN owes him/her approximately $1,100.00 in back wages from work SOI-1 provided to BEHN. SOI-1 stated he/she was not pursuing the back wages. Your Affiant is aware that BEHN filed a lawsuit against SOI-1 and other individuals and businesses on July 22, 2019 seeking an injunction or restraining order. That matter has not yet been concluded.

14.     Your Affiant believes SOI-1 to be credible. SOI-1 has only two misdemeanor convictions on his/her record, the most recent of which was Operating While Revoked in 2012. SOI-1 previously worked with BEHN for an extensive period and has had unfettered access to BEHN's residence. SOI-1 does not expect any personal benefit from the reporting of the information that follows, but rather states that he felt it was his duty to report what he knew after learned that BEHN was prohibited from possessing firearms.

15.     I am aware that BEHN was sentenced in Washington County Case Number 2018CM000254 to serve 15 days in jail in January of 2019. SOI-1 advised that when BEHN went to jail in January of 2019, SOI-1 took possession of all of BEHN's firearms for safekeeping. SOI-

4

1 stated that BEHN told him he did not want to leave the firearms unattended at his residence while he was incarcerated. SOI-1 stated he/she took the firearms back to BEHN's residence when he was released from jail in February of 2019. SOI-1 advised both transfers occurred at BEHN's home, identified as the **Target Residence**.

16.    SOI-1 said he/she took possession of, and eventually returned, the following items:

- One handgun, .380 caliber;
- One Mouser bolt action rifle (unknown caliber);
- Two (2) Saga .12 gauge shotguns;
- Over one thousand (1000) .12 gauge shotgun shells;
- One FN Five-Seven pistol, caliber 5.7X28mm;
- One FN Five-Seven rifle, model PS90, caliber 5.7X28mm;
- One KSG rifle, 9mm;
- One Smith and Wesson handgun, model 1911, .45 caliber; and
- Over one thousand (1000) unfired cartridges of 5.7X28mm ammunition.

Your Affiant is aware that the Mouser rifle, the Saga shotguns, the FN Five-Seven firearms, the KSG rifle, and the Smith and Wesson handgun are all manufactured outside of the State and Eastern District of Wisconsin.

17.    SOI-1 advised that he/she most recently observed BEHN with a firearm in June of 2019, when he saw BEHN with the FN Five-Seven pistol. BEHN kept the firearm in the center console of a 2019 white Ford F-450 bearing Wisconsin license plate EF35108.

18.    SOI-1 advised that this Ford F-450 is registered to BEHN's girlfriend, Ronni L. SHURPIT (W/F, DOB: 01/22/1989). SOI-1 advised that Shurpit told him/her of this because BEHN had missed several payments on the truck, causing her stress. Your Affiant has not personally observed BEHN in this vehicle, however Your Affiant verified with the Wisconsin Department of Transportation that SHURPIT has a 2018 and a 2019 white Ford F-450 registered

5

in her name. According to SOI-2, these are the vehicles BEHN has access to and has been driving. SOI-1 also recalled an instance in September of 2018 when BEHN fired SOI-1's handgun and fired four to five shots in the backyard at BEHN's father's residence, located at 3395 County Line Rd, Kewaskum, WI, 53040.

19.     Additionally, SOI-1 provided Your Affiant with a photograph of a person who appears to be BEHN displaying a Smith and Wesson handgun, model 1911, .45 caliber. SOI-1 stated he/she received the photograph from BEHN's "Snapchat" account sometime within the last ten to twelve months. Snapchat is a social media networking application that allows the user to take, send, and receive text, video, and photo messages that are deleted from the server after the message is viewed. The only way to preserve these images or texts is to screenshot them at the time the message is viewed. The photo is displayed below:



20.     In the photograph, BEHN is holding a black Apple iPhone. SOI-4 told Your Affiant that BEHN possesses two Apple iPhones. Based on the "selfie" style of the photograph, and the

6

fact that SOI-1 received the photograph from BEHN via Snapchat, this black Apple iPhone appears to have been the device used to create and send the Snapchat message. Your Affiant knows that a Snapchat photograph cannot be transferred to different phones immediately and must be sent out once the message/photo is taken.

**C. SOI-2**

21. Also on June 26, 2019, Your Affiant interviewed SOI-2, who stated he/she met BEHN in 2017 when he/she purchased a UTV from BEHN. Sometime in 2018, SOI-2 invested approximately $250,000 with BEHN in a joint Powersports Machines business. The agreement was that SOI-2 would provide the capitol to purchase Powersports Machines (ATVs, UTVs, etc.), and BEHN would provide the labor to fix up the machines and resell them for a profit. BEHN allegedly has kept the majority of SOI-2's initial investment, along with several of the machines the two purchased for the business.

22. Your Affiant is aware that BEHN filed a lawsuit against SOI-2 and other individuals and businesses on July 22, 2019 seeking an injunction or restraining order. That matter has not yet been concluded.

23. In June of 2019, SOI-2 searched BEHN in the Wisconsin Circuit Court Access Program (CCAP) and observed that BEHN had been previously convicted of three felonies. This made SOI-2 nervous as he/she had previously bought two firearms from BEHN and made him/her think he/she had broken federal law. SOI-2 then alerted SOI-1 and SOI-3 about BEHN's status; both indicated that they had also dealt with BEHN's firearms at one point or another.

24. Your Affiant finds SOI-2 credible. SOI-2 has never been arrested. Additionally, the facts that SOI-2 related to me were based on his own firsthand experience of the events he

7

described. SOI-2 does not expect to derive any personal benefit from the reporting of this information.

25.     SOI-2 advised he/she has observed BEHN with a FN Five-Seven handgun on three to five occasions. The first instance was in September of 2018, and the most recent was in April of 2019. SOI-2 advised BEHN carries the handgun either in his back waistband or in the center console of the truck BEHN is driving.

26.     SOI-2 stated he/she purchased two firearms from BEHN in early 2019. SOI-2 advised both purchases occurred at SOI-2's residence, which is located in the Eastern District of Wisconsin. SOI-2 stated he/she purchased an FN Five-Seven rifle for approximately five to six hundred dollars in February of 2019 from BEHN. SOI-2 additionally advised he/she purchased a .12 gauge shotgun from BEHN for five to six hundred dollars in March of 2019.

27.     SOI-2 stated he/she provided the firearms to Officer Ryan Bloch of the Germantown Police Department for safekeeping on or about July 5, 2019. Your Affiant advised SOI-2 that the firearms would be retained for evidence of a federal crime. On July 7, 2019, Officer Bloch provided the following descriptions of the firearms that SOI-2 brought in:

- One Sun Devil Manufacturing lower receiver, model SD15, multi-caliber, bearing serial number 10386 with an AR Five-Seven upper receiver, 5.7X28mm caliber; and
- One IZHMASH shotgun, imported by Russian American Armory Company Scottsburg IN, .12 gauge, bearing serial number H08408556.

Your Affiant is aware that both of these firearms and their components were manufactured outside of the State and Eastern District of Wisconsin.

8

28.     SOI-2 stated BEHN is currently driving a 2019 white Ford F-450. SOI-2 stated the

vehicle is registered to Ronni L. SHURPIT (W/F, DOB: 01/22/1989). Shurpit told SOI-2 the trucks

were in her name.

29.     On August 5, 2019, SOI-2 provided Your Affiant with messages that he/she had

received in January 2019 from the phone number he/she has saved for BEHN. These messages

indicated that BEHN was considering trading a piece of machinery for a firearm. The text stated,

"Guy wants to trade this AR15," and accompanying photographs depicted an AR-15-style rifle.

SOI-2 never learned whether BEHN ever received or took possession of the rifle.



30.     SOI-2 spoke with SOI-1 about the above photograph. SOI-1 stated he/she believed

the photograph must have been taken at the seller's residence, as SOI-1 did not recognize the

background. SOI-2 has not been inside of BEHN's residence.

9

**D. SOI-3**

31. Also on July 26, 2019, Your Affiant interviewed SOI-3 regarding BEHN. SOI-3 advised he/she became friends with BEHN in June of 2018. SOI-3 was not aware of BEHN's criminal record until June of 2019, when SOI-2 made him aware.

32. Your Affiant finds SOI-3 credible. Your Affiant was unable to find any record of SOI-3 ever having been arrested. Additionally, SOI-3 operates a Federal Firearms Licensee (FFL), which allows him/her to sell firearms to the public. A FFL is entrusted to run background checks, and ensure that federal firearms laws are adhered too when selling firearms. Additionally, the facts that SOI-2 related to me were based on his own firsthand experience of the events he described. SOI-2 does not expect any personal benefit from the reporting of this information, but rather stated that he/she felt that it was his/her duty to provide the information that follows to law enforcement.

33. SOI-3 owns a gun shop that, among other things, offers cleaning services for firearms. SOI-3 advised BEHN displayed the below firearms to him in June of 2018.

- One FN Five-Seven rifle, model PS 90, 5.7X28mm caliber;
- One Smith and Wesson handgun, model 1911, .45 caliber;
- One Mouser bolt-action rifle;
- One .380 caliber handgun; and
- Two Saga .12 gauge shotguns.

Your Affiant is aware that the FN Five-Seven rifle, the Smith and Wesson handgun, the Mouser rifle, and the Saga shotguns are all manufactured outside of the State and Eastern District of Wisconsin.

34. SOI-3 stated he/she accepted the aforementioned firearms (excluding the Mouser bolt action rifle and the two Saga .12 gauge shotguns) from BEHN in June of 2018 for cleaning

10

and took the firearms to his workshop. After cleaning them, SOI-3 returned the firearms to BEHN at BEHN's residence, identified as the **Target Residence**.

35.    SOI-3 stated he/she and BEHN had a falling out on November 14, 2018. SOI-3 dropped off a 2017 Can-Am Defender HD-8 UTV. The vehicle is worth approximately $16,500. BEHN agreed to work on the vehicle for SOI-3. BEHN has not returned to the vehicle to SOI-3. On December 12, 2018, SOI-3 sent a notarized letter to BEHN demanding the return of his/her vehicle. Your affiant has viewed a copy of this signed letter that was addressed to BEHN at the **Target Residence**.

**E.    SOI-4**

36.    On August 5, 2019, Your Affiant interviewed SOI-4. SOI-4 stated he/she has known BEHN since they were both approximately sixteen to seventeen years old. SOI-4 stated he/she has had several falling outs with BEHN in the past, but the two have reconnected several times.

37.    Your Affiant finds SOI-4 credible. SOI-4 has never been arrested. SOI-4 has known BEHN the longest out of all the sources of information with whom Your Affiant has spoken. SOI-4 provided information from firsthand knowledge despite a professed fear of BEHN due SOI-4's history of violence from BEHN. As Your Affiant was interviewing SOI-4, he/she was visibly upset and genuinely emotional when talking about the events that have transpired between her/him and BEHN.

38.    SOI-4 has been aware of BEHN's status as a felon from the time of his first felony conviction in 2006, because SOI-4 knew the victim in that case. When he/she confronted BEHN

11

about his ability to carry firearms, BEHN would reassure him/her that he was lawfully allowed to possess firearms.

39. SOI-4 stated that over the weekend of July 27-28, 2019, he/she visited BEHN at his residence. While there, SOI-4 took a photo of what appears to be a Saga .12 gauge shotgun. SOI-4 stated the shotgun photograph was taken in the upstairs bathroom, which is connected to the master bedroom. SOI-4 stated the firearm has been there for along as he/she can remember and has not moved locations.

40. SOI-4 took the photograph after speaking to SOI-2. Your Affiant told SOI-2 on July 26, 2019 that any photographs of firearms within the residence would assist in the investigation. SOI-4 took and provided the photo to SOI-2, who forwarded them to Your Affiant.

41. SOI-4 took the photo using an Apple iPhone, which automatically created a geo-location tag showing that the photograph was taken at **1560 Grand Ave, Hartford, Wisconsin,** which is the **Target Residence**:



42. SOI-4 visited BEHN's residence again on August 3, 2019. SOI-4 took photographs depicting what appears to be a FN Five-Seven handgun. SOI-4 stated the handgun was inside of BEHN's nightstand next to his bed. The following is one of the photographs taken by SOI-4:



43. SOI-4 stated he/she feared what BEHN would do to him/her if he found out that SOI-4 had taken this photo, so he/she deleted the photograph from his/her phone after providing it to law enforcement. According to SOI-4, BEHN physically assaulted SOI-4 in February of 2019. SOI-4 only reported this to a close friend. Due to BEHN losing his temper on SOI-4 on multiple occasions during the course of their relationship, SOI-4 fears BEHN.

44. Your Affiant noticed in the above photograph that there is a business card for defense attorney Robert G. Labell. It should be noted that Labell represented BEHN in the case for which BEHN served jail time in January 2019, Washington County court case 2018CM000254. SOI-4 further stated he/she has always observed BEHN with firearms.

13

## F.    Probable Cause that Evidence, Fruits, and Instrumentalities Will Be Found at the Target Residence

45.    Your Affiant believes that BEHN resides at the **Target Residence**. BEHN uses this address as his residence on his state of WI identification card. BEHN is also a convicted sex offender, and he uses this address for the State of Wisconsin Department of Corrections Sex Offender Registry. Additionally, SOI-1, SOI-3, and SOI-4 have all identified that address as BEHN's residence. On August 5, 2019 law enforcement conducted surveillance and observed an individual matching the description of BEHN mowing the lawn of the residence. Your Affiant further believes, based on the SOIs' statements, that BEHN is the only occupant of the **Target Residence**.

46.    Each of the SOIs described above have seen BEHN on multiple occasions with firearms and ammunition at the **Target Residence** and/or in the trucks maintained on the premises. Your Affiant knows from training and experience that illegally-possessed firearms are a commodity that is often kept by the possessor for long periods of time. It is extremely difficult for a convicted felon, such as BEHN, to obtain firearms by legitimate means. Once a felon obtains a firearm, therefore, it is typically important to him to retain possession of that firearm. The applicability of this generality here is supported by in the fact that it appears that several of the SOIs above witnessed BEHN in possession of some of the same firearms many months apart.

47.    As described in Attachment B, this application seeks permission to search for records that might be found at the **Target Residence** in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. It appears that, BEHN has used his digital devices to take and send photographs of himself

14

with firearms, as well as to negotiate the receipt of firearms from others. Thus, the warrant applied for would authorize the seizure of electronic storage media and the copying of electronically stored information, all under Rule 41(e)(2)(B).

48.     I submit that if a computer or electronic storage medium is found at the **Target Residence**, there is probable cause to believe records of the type described will be stored on that computer or storage medium. Based on my knowledge, training, and experience, I know that electronic devices can store files and information for long periods of time. Even things viewed via the Internet are typically stored for some period of time on the device. I know that electronic files or remnants of such files can often be recovered using forensic tools months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

49.     As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the **Target Residence** because:

> a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

15

Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

16

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

50. Your Affiant additionally requests that the Court's order authorizing the search of the **Target Residence** include any vehicles located within the curtilage of that property. SOI-1 reported that he knows BEHN to store a firearm in the center console of a truck that he has been driving for some time but that is registered to someone else. Additionally, SOI-4 has been in a truck with BEHN and has observed a firearm. Your Affiant is further aware that BEHN has access to several trucks that are not registered in his name. BEHN has access to a 2019 Ford F450 White pickup truck registered to Ronni Shurpit. The state of Wisconsin tag of the vehicle is EF35108. Additionally, Shurpit has a 2018 White Ford F-450 bearing WI license plate EF35087. According to SOI-4, BEHN has access and drives both vehicles. In addition, BEHN's father (Alan Behn) has access to the 2018 White Ford F-450. SOI-1 and SOI-4 both report that BEHN has transported and stored a handgun in the center console of the trucks he is driving. According to SOI-1, BEHN also

17

has access to a 2019 Red Ford F-450. This vehicle is allegedly registered to an unknown individual. Your Affiant is requesting law enforcement have the ability to search any vehicle on the property.

## IV. EXECUTION OF THE REQUESTED WARRANTS

51. Your Affiant asks that the requested warrant be issued as an "anytime" warrant. SOI-1 has stated that BEHN barricades the front door of the **Target Residence** with 2x6 wood beams. SOI-1 has provided Your Affiant with the following photograph depicting the barricaded door, which can be seen behind the motorcycles:



Additionally, there is a seven-foot tall privacy fence surrounding the property. According to SOI-1, BEHN has cameras on the property, but he/she is unsure if they are operational. SOI-1, SOI-2, and SOI-4 reported that BEHN possesses FN Five-Seven firearms, which I know to have the ballistic capability of penetrating bulletproof vests. There is therefore good cause for the Court to order this warrant to be served "anytime," so that law enforcement may use the cover of darkness for safety.

18

52.     With respect to any digital devices seized, and consistent with Rule 41(e)(2)(B), the warrant Your Affiant is seeking would permit a later, offsite review of the devices and their contents consistent with the warrant to determine what constitutes evidence described by the warrant. There is therefore good cause for the Court to order this warrant to be served "anytime."

## VI.    CONCLUSION

53.     Based on the information set out above, Your Affiant respectfully submits that this affidavit establishes probable cause for the issuance of the requested warrants.

19

## ATTACHMENT A

### Property to Be Searched

The property to be searched is **1560 Grand Ave, Hartford, Wisconsin, 53027**, to include the basement of the home, any storage or garage areas, and all vehicles on the premises. The structure is single family, single story, stand-alone residence with white colored siding, a metal roof, and black trim. There is a two-story garage with a loft to the east of the main residence. There is a fence surrounding the property that is approximately seven feet tall.



20

## ATTACHMENT B

### Evidence to be Seized from 1560 Grand Ave, Hartford, Wisconsin, 53027

All evidence, instrumentalities, information, records, and contraband relating to violations of Title 18, United States Code, Section 922(g)(1) (possession of firearms and/or ammunition by a felon), including:

1. Firearms, including pistols, handguns, shotguns, rifles, machine guns, and silencers;

2. Firearm accessories and components for modification, including mufflers, silencers, laser sights, boxes, cases, and bulletproof vests;

3. Firearm ammunition, ammunition components, or magazines used to hold ammunition;

4. Records pertaining to the possession, purchase, sale, receipt, exchange, or servicing of firearms, including ATF Form 4473 Firearms Transaction Records, sales receipts, contracts, letters, and electronic messages;

5. Indicia of occupancy, residency or ownership of the premises and/or things described in the warrant, including but not limited to utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, addressed envelopes, escrow documents and keys;

6. Evidence of Justin BEHN's status and/or knowledge of his status as a convicted felon, including any records, images, or paperwork pertaining to his court cases, the judgments in those cases, his sentences and the terms thereof, and/or his sex offender registration;

7. Digital devices, including cellular telephones, laptop and desktop computers, and tablets, as well as any storage areas on these devices, which shall be searched evidence of any of the above, as well as:

   a. All records, including electronic communications such SMS (text) messages, MMS messages, instant messages, emails, notes, and other forms of written messages; as well as any financial records, such as bank records, checks, credit card bills, account information and other financial records, related to Justin BEHN's possession, purchase, or sale of firearms, or his acceptance of firearms as payment for services rendered;

21

b. Evidence of the installation and/or use of the social networking application Snapchat;

c. Call logs;

d. Contact lists, to assist with the interpretation of the communications documented and/or stored within the phones and identify the participants; and

e. Evidence of user attribution, showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, calendars, saved usernames and passwords, notes, documents and Internet browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data), any handmade form, any mechanical form, and any photographic form.

22